# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Disability Support Alliance,<br>on behalf of its members, and | Case No. 15-cv-1522 (MJD/TNL) |
| Scott Smith, | |
| Plaintiffs/Counter Defendants, | |
| v. | **REPORT & RECOMMENDATION** |
| Monali, Inc., | |
| Minesh Bhakta, and | |
| Rasheshri Bhakta, | |
| Defendants/Counter Claimants. | |

Paul R. Hansmeier, Class Justice PLLC, 100 Fifth Street South, Suite 1900, Minneapolis, MN 55402 (for Plaintiffs/Counter Defendants); and

Amber R. Koth and James P. Conway, Jaspers, Moriarty & Walburg, PA, 206 Scott Street, Shakopee, MN 55379 (for Defendants/Counter Claimants).

## I. INTRODUCTION

This matter comes before the Court, United States Magistrate Judge Tony N. Leung, on Plaintiffs' Motion to Dismiss (ECF No. 12) and Defendants' Motion for Judgment on the Pleadings and Alternative Relief (ECF No. 25). These motions have been referred to the undersigned for a report and recommendation to the district court, the Honorable Michael J. Davis, District Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1. (ECF Nos. 20, 28.)

1

A hearing was held.  Paul R. Hansmeier appeared on behalf of Plaintiffs/Counter Defendants Disability Support Alliance ("DSA") and Scott Smith ("Smith") (collectively "Plaintiffs").  James P. Conway appeared on behalf of Defendants/Counter Claimants Monali, Inc., Minesh Bhakta, and Rasheshri Bhakta[1] (collectively "Defendants").

Based upon the record, memoranda, and the proceedings herein, **IT IS HEREBY RECOMMENDED** that Plaintiffs' Motion to Dismiss (ECF No. 12) be **DENIED** and Defendants' Motion for Judgment on the Pleadings and Alternative Relief (ECF No. 25) be **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

## II. BACKGROUND

### A. Plaintiffs' Claims

Defendants own a hotel, a place of public accommodation, in Shakopee, Minnesota.  (Compl. ¶¶ 11-12, ECF No. 1.)  Plaintiffs bring this action against Defendants, alleging that the parking lot of Defendants' hotel is not fully accessible and independently usable by persons with disabilities due to architectural barriers.  (Compl. ¶ 1.)  DSA "is a Minnesota nonprofit corporation," whose members are persons with disabilities.  (Compl. ¶ 8.)  "The purpose of [DSA] is to 'eliminate discrimination on the basis of disability' and 'promote the betterment of the lives of those living with disabilities.'"  (Compl. ¶ 8.)  Smith is a resident of Marshall, Minnesota, and "suffers from arthrogryposis, a rare and disabling congenital joint contracture that . . . results in muscle weakness and an inability to stand or walk."  (Compl. ¶¶ 9, 10.)

---

[1] The issue of the proper spelling of Ms. Bhakta's first name will be discussed in Section IV.C *infra*.

In January 2015, Smith visited Defendants' hotel.  (Compl. ¶ 13.)  Smith was not able to "find an accessible parking space with an access aisle" in the hotel's parking lot. (Compl. ¶ 14.)  Parking in a space without an access aisle means that other vehicles could potentially park in the spaces directly adjacent to Smith's car, making it impossible for Smith to operate his car-top wheelchair carrier.  (Compl. ¶ 16.)  Plaintiffs allege that "[d]espite having over [30] parking spaces, [Defendants' hotel] had zero spaces designated and reserved as accessible parking spaces through paint and signage, and all parking spaces lacked access aisles."  (Compl. ¶ 15.)  Plaintiffs allege that these architectural barriers deter them from visiting Defendants' hotel in the future and that they intend to return to patronize Defendants' hotel but the architectural barriers present deter them from doing so.  (Compl. ¶17.)  Plaintiffs allege that they plan to return and patronize Defendants' hotel "when they learn that the premises ha[s] been made fully accessible to persons who use wheelchairs for mobility."  (Compl. ¶ 17.)

Plaintiffs bring claims against Defendants for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A.01 *et seq.*  (Compl. ¶¶ 37-54.)  Plaintiffs also seek civil damages on grounds that these acts amount to unfair discrimination and constitute a bias offense under Minnesota law.  (Compl. ¶¶ 55-58.)

**B. Defendants' Answer & Counterclaims**

In their Answer, Defendants state that, on the day in question, their "parking lot was nearly empty" and, if Plaintiffs had actually come to or attempted to access their hotel and parking lot, Plaintiffs "could have parked in such a way as to allow them any

3

use of wheelchair systems and accessible vehicle[s] they may have needed." (Answer ¶ 11, ECF No. 9.) Defendants "state that they would have assisted Plaintiffs in locating safe and appropriate parking had such assistance been requested, however, none of the Plaintiffs had any contact with any of the Defendants . . . other than in the form of service of the Complaint in this lawsuit." (Answer ¶ 11.)

Defendants bring counterclaims for abuse of process and civil conspiracy against Plaintiffs. (Answer ¶¶ 49-83.) Defendants allege that DSA and its members "seek to misuse the civil process and court system to extort settlements from businesses rather than the intended purposes of the ADA's and MHRA's protections and their private causes of action to effect accommodations for persons with disabilities." (Answer ¶ 73.) Defendants allege that, at the time of their Answer, DSA and its members have commenced over 30 actions in Minnesota's state and federal courts making similar claims. (Answer ¶¶ 57-59; *see* Answer ¶¶ 63, 64, 66, 67.)

Among other cases, Defendants identify three other federal cases brought by Plaintiffs involving "identical claims and causes of action against various defendants arising from events which all allegedly transpired on [the same day in January]." (Answer ¶ 61.) These include claims of discrimination against another hotel[2] and two restaurants[3] based on the configurations of their parking lots. (Answer ¶¶ 64, 66, 67.) Defendants assert that Plaintiffs "cannot reasonably purchase a hotel room and spend the night at two different hotels in the same place on the same day," a proposition made all

---

[2] *Disability Support Alliance v. Pasub Corp.*, No. 15-cv-617 (JJK) (pending).
[3] *Disability Support Alliance v. T.A.B. of Shakopee, Inc.*, No. 15-cv-616 (JNE/BRT) (dismissed with prejudice by stipulation*); Disability Support Alliance v. Perkins & Marie Callender's, LLC*, 15-cv-1523 (JRT/TNL) (dismissed with prejudice by stipulation).

the more unreasonable given that Smith's residence is "only a 2 1/2 hour drive from Shakopee." (Answer ¶ 65.) Defendants allege that "it is unreasonable under the circumstances for . . . Smith to stay at one hotel, much less two, given the distance to his home, and is otherwise further support that Plaintiffs' actions are filed for economic reasons rather than for the policy reasons advanced in the ADA and MHRA." (Answer ¶ 65.)

In further support of their abuse-of-process and civil-conspiracy counterclaims, Defendants allege that another member of DSA, Eric Wong, stated during a deposition taken in connection with a state-court matter "that his attorney Paul Hansmeier's brother, Peter, and another employee of [attorney] Hansmeier drove . . . Wong to the defendant art gallery and store, but that [Wong] did not intend to actually purchase anything from either of those defendant businesses" and "that in none of [Wong's] prior ADA claim cases, of which there were a number, did he notify the defendant business of any access issues and instead left that or any other contacts with the defendant business to his attorney." (Answer ¶¶ 68-70.) Defendants also allege that attorney Hansmeier "has previously been sanctioned by Minnesota courts for commencing litigation in bad faith and for the purpose of extorting a settlement rather than resolving a real case in controversy." (Answer ¶ 74.)

Defendants allege that Plaintiffs and attorney Hansmeier "are engaged in a pattern of abusive litigation designed not to achieve accommodations for persons with disabilities, but rather, to extort settlements and damages awards from businesses." (Answer ¶ 71.) Defendants allege that Plaintiffs are seeking to use the court to create a

public forum to embarrass them and extort a financial settlement.   (Answer ¶ 75.) Defendants allege that had Plaintiffs actually intended "to patronize [their] business or achieve an accommodation, they would have had some contact with Defendants before bringing this action."   (Answer ¶ 76.)   Defendants further allege that Smith and DSA (including its "component members") have conspired to bring this action to extort a financial benefit from them.  (Answer ¶¶ 78-82.)

### III. PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS

Plaintiffs have brought a motion to dismiss Defendants' counterclaims under Minnesota's anti-SLAPP statutes, Minn. Stat. §§ 554.01-.06, which are directed at "'Strategic Lawsuits Against Public Participation'— . . . lawsuits that target the exercise of '[l]awful conduct or speech that is genuinely aimed in whole or in part at procuring favorable government action.'"  *Leiendecker v. Asian Women United of Minn.*, 848 N.W.2d 224, 227 (Minn. 2014) (alteration in original) (quoting Minn. Stat. § 554.03).  It is Plaintiffs' position that Defendants' counterclaims for abuse of process and civil conspiracy should be dismissed under Minnesota's anti-SLAPP statutes because the counterclaims target Plaintiffs' attempt to procure favorable government action from this Court and "are therefore an impermissible attempt to punish Plaintiffs for their public participation."  (Pls.' Mem. in Supp. of Mot. to Dismiss at 9, ECF No. 14.)

### A.  Minnesota's anti-SLAPP Statutes

"Minnesota's anti-SLAPP statutes were enacted in 1994 to 'protect[] citizens and organizations from civil lawsuits for exercising their rights of public participation in government.'"  *Middle-Snake-Tamarac Rivers Watershed Dist. v. Stengrim*, 784 N.W.2d

834, 839 (Minn. 2010) (alteration in original) (quoting Act of May 5, 1994, ch. 566, 1994 Minn. Laws 895, 895); *accord Leiendecker*, 848 N.W.2d at 228.  "Typically, anti-SLAPP statutes protect the exercise of two types of public-participation rights: the right to free speech and the right to petition the government." *Leiendecker*, 848 N.W.2d at 228. "These rights are threatened by SLAPP suits, which are generally filed in order to use litigation to intimidate opponents' exercise of rights of petitioning and speech, even when, as is often the case, the party filing the suit does not care whether it actually prevails." *Id.* (quotation omitted).  "Minnesota's anti-SLAPP [statutes] immunize from liability '[l]awful conduct or speech that is genuinely aimed in whole or in part at procuring favorable government action' unless the speech 'constitutes a tort or a violation of a person's constitutional rights.'" *Unity Healthcare, Inc. v. Cnty. of Hennepin*, No. 14-cv-114 (JNE/JJK), 308 F.R.D. 537, 540 (D. Minn. 2015) (alteration in original) (quoting Minn. Stat. § 554.03), *appeal filed* (8th Cir. July 10, 2015); *accord Leiendecker*, 848 N.W.2d at 228.

"The procedural provisions of the anti-SLAPP statutes, Minn. Stat. § 554.02,  . . . set out 'a unique procedural framework.'" *Leiendecker*, 848 N.W.2d at 228-29 (quoting *Stengrim*, 784 N.W.2d at 839).  Once a party has moved for immunity under the anti-SLAPP statutes, "the court must determine whether the [moving party] . . . has made a threshold showing that the underlying 'claim materially relates to an act of the moving party that involves public participation.'" *Unity Healthcare*, 308 F.R.D. at 540 (quoting Minn. Stat. § 554.02, subd. 1)).  "If the moving party has made its threshold showing, the second step is to determine whether 'the responding party has produced clear and

convincing evidence that the acts of the moving party are not immunized from liability.'" *Id.* (quoting Minn. Stat. § 554.02, subd. 2(3)). "[T]he responding party cannot meet its burden through reliance on the allegations but must 'produce evidence to defeat an anti-SLAPP motion.'" *Id.* (quoting *Leiendecker*, 848 N.W.2d at 233). "The responding party bears the burden of proof, production, and persuasion." *Id.* (citing *Leiendecker*, 848 N.W.2d at 231). "In addition, the responding party must typically meet these burdens without discovery because, upon the filing of an anti-SLAPP motion, 'discovery must be suspended pending the final disposition of the motion,' unless the responding party can show 'good cause' for 'specified and limited discovery.'" *Id.* (quoting Minn. Stat. § 554.02, subd. 2(1)). "If the moving party prevails on its anti-SLAPP motion, it is entitled to attorney fees and can petition the court for damages." *Id.* (citing Minn. Stat. § 554.04).

### B. *Unity Healthcare*

In *Unity Healthcare*, another court of in this District found that Minnesota's anti-SLAPP statutes were inapplicable in federal court because they conflict with Rule 56 of the Federal Rules of Civil Procedure. *Id.* at 540-43. The district court observed that "[t]he restrictive standard for discovery under the anti-SLAPP [statutes] is oil to the water of Rule 56's more permissive standard," which "makes discovery the norm and ensures that adequate discovery will occur before summary judgment is considered." *Id.* at 541 (quotation omitted). Conversely, under the anti-SLAPP statutes, discovery is the exception and the court is forced "to test the [nonmoving party's] evidence before the [nonmoving party] has completed discovery." *Id.* (quotation omitted). "While the anti-

SLAPP [statutes] permit[] further discovery upon a showing of good cause, Rule 56 does not place that hurdle in the path of a party seeking to obtain information to avoid pre-trial dismissal of its properly pleaded claims." *Id.* Accordingly, "[b]ecause the limited discovery mandated in Minn. Stat. § 554.02 collides with Rule 56 . . . ," the district court concluded that the anti-SLAPP statutes' discovery rules could not be applied in federal court. *Id.*

The district court then turned to the standard to be applied when determining whether the nonmoving party's "properly pleaded claims are supported by evidence sufficient to survive pre-trial dismissal." *Id.* Here, another collision occurred. *See id.* at 541-42.

> Under Rule 56, a [the nonmoving party's] well-pleaded claims survive [the moving party's] motion for summary judgment if the [nonmoving party] can point to evidence showing a genuine issue of material fact. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Moreover, all inferences must be drawn in favor of the nonmoving party.

*Id.* at 541 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

> By contrast, the anti-SLAPP law requires a court to determine whether the nonmoving party has "produced clear and convincing evidence that the acts of the moving party are not immune from liability." Minn. Stat. § 554.02, subd. 2(3). Inferences are not drawn in favor of the nonmoving party. Rather, the nonmoving party bears the burden of production, proof, and persuasion. *Leiendecker*, 848 N.W.2d at 231. If the Court finds that the nonmoving party has failed to meet its burden, then the Court must dismiss the party's claims.

*Id.* at 541-42.

9

The district court observed that "Minnesota's anti-SLAPP [statutes] turn[] judges into pre-trial factfinders who must decide factual disputes by assessing credibility and weighing evidence, and they must do so without drawing inferences in favor of the nonmoving party.  This standard is anathema to the standard under Rule 56."  *Id.* at 542.  Because Rule 56 and Minnesota's anti-SLAPP statutes "cannot be brought into harmony," and Rule 56 does not violate the Rules Enabling Act or the Constitution, the district court concluded that Minnesota's anti-SLAPP statutes could not be applied and therefore the motion to dismiss brought under Minnesota's anti-SLAPP statutes had to be denied.  *Id.* at 542-43.

## C. Discussion

For the sound reasons articulated by the district judge in *Unity Healthcare* and the magistrate judge in the underlying report and recommendation, this Court recommends that Plaintiffs' motion to dismiss based on Minnesota's anti-SLAPP statutes be denied.  The magistrate judge's underlying report and recommendation addressed Minnesota's anti-SLAPP statutes in the context of Rule 12.[4]  *See id.* at 545-49.  Under the anti-SLAPP statutes' dismissal provisions,

> once [the moving party] makes the minimal showing that the speech or conduct forming the basis of the [nonmoving party's] claims against it was genuinely aimed at procuring favorable government action, the burden shifts to [the nonmoving party] to produce clear and convincing evidence that the [moving party's] conduct was not immune. *Leiendecker*, 848 N.W.2d at 229; Minn. Stat. § 554.02, subd. 2(2)-(3).  A court reviewing such a motion does not give the

---

[4] The district judge "express[ed] no opinion as to whether the anti-SLAPP [statutes] conflict[ed] with Rule 12." *Unity Healthcare*, 308 F.R.D. at 540.  "[T]he Rule 12 motions and issues ha[d] already been decided."  *Id.* at 541.

> [nonmoving party] the benefit of the doubt on its evidence by
> viewing the facts in the light most favorable to the
> [nonmoving party]; instead, the court weighs the evidence
> and asks whether the [nonmoving party] has persuaded the
> court to view the facts in a way that favors the [nonmoving
> party's] claims. *Leiendecker*, 848 N.W.2d at 231. As a
> result, Section 554.02, subd. 2, allows a court to resolve an
> anti-SLAPP motion and "dismiss a [nonmoving party's]
> claim on a preliminary basis in a different manner than it
> would otherwise resolve a preliminary motion attacking the
> merits of a case under Rules 12 or 56."

*Id.* at 545 (quoting *Intercon Solutions, Inc. v. Basel Action Network*, 969 F. Supp. 2d

1026, 1041 (N.D. Ill. 2013)).

Noting that a federal court considering a motion to dismiss pursuant to Rule

12(b)(6) "is not permitted to consider matters outside the pleadings," the magistrate judge

observed that the federal court "engages in a different inquiry than a court applying

Minnesota's anti-SLAPP motion to dismiss standards." *Id.* at 547. Minnesota's anti-

SLAPP statutes require the "examin[ation of] . . . evidentiary materials outside the face of

the complaint." *Id.* (citing *Leiendecker*, 848 N.W.2d at 230); *see* 554.02, subd. 2(2)-(3).

When a federal court considers matters outside the pleadings in connection with a motion

to dismiss under Rule 12(b)(6) or 12(c), the Federal Rules of Civil Procedure require that

the motion be treated as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d);

*accord Unity Healthcare*, 308 F.R.D. at 547. Summarizing these principles, the

magistrate judge stated:

> What this means is that a federal district court can decide to
> ignore matters outside the complaint on a motion to dismiss
> for failure to state a claim, and if the court determines that the
> allegations of the complaint fail to state a plausible claim, the
> court will dismiss such a claim under the standards of Rule

> 12(b)(6).  But if matters outside the complaint are presented, and the court relies on those evidentiary materials to decide the motion, it must resolve the motion according to the summary-judgment standard of Rule 56.

*Unity Healthcare*, 308 F.R.D. at 547-48 (citation omitted).  "Stated differently, 'Rule 12(d) links Rule 12 with Rule 56 to provide the exclusive means for federal courts to use to rule upon a pretrial motion to adjudicate a case on the merits based on matters outside the complaint.'"  *Id.* at 548 (quoting *3M Co. v. Boulte*r, 842 F. Supp. 2d 85, 98 (D. D.C. 2012).

Accordingly, the magistrate judge concluded that "there is no room in the system established by the Federal Rules of Civil Procedure for the Court to dismiss a claim on its merits prior to trial based on a consideration of evidentiary materials outside the pleadings other than in the manner provided by Rule 56."  *Id.*  The magistrate judge concluded that Minnesota's anti-SLAPP statutes require federal courts "to dismiss a claim based on matters outside the pleadings in a manner that is not permitted by the Federal Rules" and inconsistent with Rule 56's summary-judgment analysis, and "strips the federal court of the discretion it has to exclude extra-pleading submissions provided in connection with a motion under Rule 12(b)(6) or Rule 12(c)."  *Id.* at 548 & n.6. Moreover, by

> [a]pplying Minnesota law, the court evaluating a motion under Minn. Stat. § 554.02, subd. 2, does not take reasonable inferences from the evidence in favor of the non-moving party.  Instead, [the court] must weigh the evidence and make a determination whether the [nonmoving party] has clearly and convincingly persuaded the court that the [moving party's] conduct amounted to a tort or a violation of the [nonmoving party's] constitutional rights.

*Id.* at 548.  This weighing of "evidentiary material . . . and determin[ing] whether [the nonmoving party's] claims have merit . . . is in direct conflict with the standards of Federal Rule of Civil Procedure 56."  *Id.*

The magistrate judge concluded that Minnesota's anti-SLAPP statutes "cannot apply here precisely because Rules 12 and 56 are so broad that they govern the circumstances, in all categories of civil cases, under which a claim can be dismissed on the merits by looking at matters outside the pleadings."  *Id.* at 551.  "Rule 12(d) makes clear that when matters outside the complaint are presented to and not excluded by the court on a motion to dismiss (which is exactly what a court applying Minnesota's anti-SLAPP motion to dismiss is required to do), the motion *must* be converted to one for summary judgment."  *Id.*  In closing, the magistrate judge noted that "Rules 12 and 56 were not adopted in violation of the Rules Enabling Act" and "do not run afoul of . . . the Constitution."  *Id.* at 553.  Therefore, the magistrate judge found that "[t]he motion to dismiss procedure established by Minn. Stat. § 554.02, subd. 2, as interpreted by the Minnesota Supreme Court in *Leiendecker* irreconcilably conflicts with Federal Rule[s] of Civil Procedure 12 and 56 because it requires the Court to weigh evidence in a manner that is expressly prohibited by the Federal Rules."  *Id.* at 554.

*Unity Healthcare* was issued after the briefing of Plaintiffs' motion was nearly complete and approximately one month before the hearing.  Defendants brought *Unity Healthcare* to the attention of the Court and Plaintiffs in a letter prior to the hearing.  (*See* ECF Nos. 37, 38.)  At the hearing, Plaintiffs' counsel acknowledged the decision in *Unity*

*Healthcare* and stated that he had nothing further to add, essentially conceding that *Unity Healthcare* disposed of Plaintiffs' motion.  Accordingly, for the reasons stated in *Unity Healthcare*, the Court recommends that Plaintiffs' motion to dismiss be denied.

## IV. DEFENDANTS' MOTION FOR JUDGEMENT ON THE PLEADINGS

Defendants have moved for judgment on the pleadings, asserting that Plaintiffs lack standing and have failed to state a claim for which relief can be granted.  (*See* Defs.' Mem. in Supp., ECF No. 27.)  Additionally, Defendants request that the Court amend the caption of this matter to reflect the proper spelling of Defendant Rasheshri Bhakta's name.[5]  (Defs.' Mem. in Supp. at 1-2.)  Lastly, Defendants request fees and costs in the event that the Court concludes that judgment should be entered in their favor.  (Defs.' Mem. in Supp. at 1, 18-21.)

The granting of a 12(c) motion is appropriate when the movant has shown that "no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." *Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir.2008) (quotation omitted).  In deciding a motion for judgment on the pleadings, a court "view[s] all facts pleaded by the nonmoving party as true and grant[s] all reasonable inferences in favor of that party." *Id.*

---

[5] Defendants also request alternative relief should the Court determine that Defendants' motion pursuant to Minnesota's anti-SLAPP statutes is procedurally proper.  (*See* Defs.' Mem. in Supp. of Mot. at 1, 17-18.)  Because the Court concludes, as in *Unity Healthcare*, that Minnesota's anti-SLAPP statutes cannot be applied in federal court, the Court declines to address the requested alternative relief.

### A.  Standing

Defendants first assert that this Court lacks subject-matter jurisdiction over Plaintiffs' ADA and MHRA claims because Plaintiffs lack standing.[6]  "Federal court jurisdiction is restricted to cases and controversies."  *Wieland v. U.S. Dep't of Health & Human Servs.*, 793 F.3d 949, 954 (8th Cir. 2015) (quotation omitted); *see* U.S. Const. art. III, § 2.  "A case or controversy exists only if a plaintiff 'personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.'"  *Wieland*, 793 F.3d at 954 (quoting *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 99 (1979)).  "If a litigant lacks Article III standing to bring his claim, then [federal courts] have no subject matter jurisdiction over the suit."  *Iowa League of Cities v. E.P.A.*, 711 F.3d 844, 869 (8th Cir. 2013) [hereinafter *ILC*].  Defendants challenge the standing of both Plaintiffs—Smith as an individual and DSA as an association.  Because the Court concludes that the question of whether DSA has standing is ultimately dependent upon whether Smith has standing, the Court first addresses Smith's individual standing.

### 1.  Individual Standing

Defendants contend that Smith does not have standing because he has not suffered an injury in fact and his claims are moot in any event.[7]

> A plaintiff bears the burden of showing (1) that he has suffered an "injury in fact" that is "actual or imminent, not 'conjectural or 'hypothetical'"; (2) that the injury is causally

---

[6] The parties discuss standing primarily in the context of the ADA and do not address standing separately for each type of claim.  This coextensive treatment of the ADA and MHRA claims is consistent throughout the parties' briefing.

[7] Defendants also assert that "because there is no injury in fact, . . . there cannot be causality."  (Pls.' Mem. in Opp'n at 9, ECF No. 32.)  Defendants do not make a separate argument regarding the lack of a causal condition other than there has been no injury in fact.

connected to the defendant's allegedly illegal conduct and not to the "independent action of some third party not before the court"; and (3) that "it [is] 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"

*Wieland*, 793 F.3d at 954 (alteration in original) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted)); *accord Stalley v. Catholic Health Initiatives,* 509 F.3d 517, 521 (8th Cir. 2007); *Sawczyn v. BMO Harris Bank Nat'l Ass'n*, No. 13-cv-2309 (RHK/SER), 8 F. Supp. 3d 1108, 1111 (D. Minn. 2014). "When, as here, a plaintiff seeks injunctive relief, he must demonstrate a 'real and immediate threat of future injury by the defendant.'" *Sawczyn*, 8 F. Supp. 3d at 1111 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983)). "[S]tanding is determined as of the lawsuit's commencement." *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000); *accord Sawczyn*, 8 F. Supp. 3d at 1111 n.1.

### a. Injury

Defendants argue that Smith did not suffer an injury in fact because there was no actual injury—he apparently never exited the vehicle and has no actual damages—and the Complaint contains only "threadbare assertion[s] of [Smith's] intent to return." (Defs.' Mem. in Supp. at 5.)

Defendants have presented a facial attack to Smith's standing and, therefore, "the Court determines only whether the plaintiff has plausibly alleged facts suggesting standing exists, mirroring the standard under Federal Rule of Civil Procedure 12(b)(6)" and does not "consider matters beyond the pleadings and resolve facts to determine standing." *Wong*, 2015 WL 225231, at *2; *see Stalley*, 509 F.3d at 521. Accordingly, the

16

Court looks only at the facts Smith alleges in the Complaint and has not considered the declaration Smith submitted in connection with his opposition to the instant motion. (*See* ECF No. 34.)

In *Steger v. Franco, Inc.*, a blind individual was patronizing a café located in a larger building. 228 F.3d at 891. "Before leaving the café, [the individual] entered the [building's] common area to use the first floor men's restroom." *Id.* The individual "asked for and was given directions to the restroom, but was unable to locate it because the restroom was not marked with raised lettering, braille, or other signage that would identify it to a blind person." *Id.* at 891-92. The individual had "not reentered the building since" the incident. *Id.* at 892. The Eighth Circuit concluded that the blind individual suffered an injury, and therefore had standing, when he attempted to "access the men's restroom, but was unable to do so because the restroom's signage was not ADA-compliant." *Id.* at 893.

Here, Smith alleges that he has a disability which requires him to use a wheelchair for mobility; he lives in Marshall, Minnesota, and he visited Defendants' hotel in Shakopee, Minnesota[8]; Defendants' hotel did not have an accessible parking space; he was deterred from patronizing Defendants' hotel because of the danger posed by parking in a space without an access aisle, namely, impeding the use of his car-top wheelchair carrier; he is currently deterred from patronizing Defendants' hotel because of these architectural barriers; and he intends to return and patronize Defendants' hotel when the

---

[8] The Court takes judicial notice that the distance between Marshall and Shakopee is over 100 miles. *See Mut. Ben. Life Ins. Co. v. Robison*, 58 F. 723, 732 (8th Cir. 1893) (taking judicial notice of distance).

hotel is fully accessible.  (*See* Compl. ¶¶ 1-2, 9-18, 30, 42-43, 51-52.)  Taking the factual allegations as true as this Court must for purposes of this motion, Smith visited Defendants' hotel intending to patronize it and was prevented from doing so because the hotel lacked accessible parking.  While these allegations are less than robust, the Court concludes that Smith has standing.  *See Steger*, 228 F.3d at 895.  As the Court concludes that Smith has sufficiently alleged an injury in fact, the Court need not address the sufficiency of the allegations regarding Smith's intent to return.[9]

Defendants wield the distance between Smith's residence and their hotel as a double-edged sword—too great to suggest a likelihood of future harm and not great enough for it to be reasonable for Smith to spend money on a hotel room when he could just return home.  (Defs.' Mem. in Supp. at 6-7.)  While the plaintiff's proximity to the place of accommodation is one factor to be considered, this factor "is less important where the place of public accommodation is a hotel."  *Adams*, 2015 WL 7738374, at *3.  Moreover, Defendants "may explore the basis for [Smith's] standing during discovery," including whether Smith ever intended to patronize Defendants' hotel, "and mount a factual challenge at a later stage of the proceedings."  *Wong*, 2015 WL 225231, at *2 n.1;

---

[9] "In the context of the ADA, a plaintiff may demonstrate an 'injury in fact' by establishing his intent to return to the noncompliant public accommodation."  *Sawczyn*, 8 F. Supp. 3d at 1111; *see Steger*, 228 F.3d at 892-93.  "[T]here is no definitive test in the Eighth Circuit for determining whether a plaintiff intends to return to a noncompliant accommodation."  *Id.* at 1112 (citing *Miller v. Ataractic Inv. Co.*, Civ. No. 11-3509-CV-DGK, 2012 WL 2862883, at *3 (W.D. Mo. July 11, 2012)); *see, e.g.*, *Adams v. Capko, Capko & Griffith, LLC*, No. 6:15-cv-3346-MDH, 2015 WL 7738374, at *3 (W.D. Mo. Nov. 30, 2015).  The following factors, however, have been considered by other courts in determining whether a plaintiff intends to return to a noncompliant accommodation: "(1) the plaintiff's proximity to the accommodation; (2) the frequency of [the] plaintiff's nearby travel; (2) the plaintiff's past patronage; and (4) the definiteness of [the] plaintiff's plans to return."  *Sawczyn*, 8 F. Supp. 3d at 1111 (citing *Steelman v. Rib Crib No. 18*, Nos. 11-3433-CV-S-RED et al., 2012 WL 4026686, at *2 (W.D. Mo. Sept. 12, 2012)).  These "factors . . . merely serve as a 'guide' to determining whether the [p]laintiff has sufficiently pleaded the likelihood of future injury."  *Adams*, 2015 WL 7738374, at *3 (citing *Steelman*, 2012 WL 4026686, at *2).

*see Sawczyn*, 8 F. Supp.3d at 1111 ("[T]he parties may challenge jurisdiction more than once throughout the course of litigation.").

Similarly, Defendants argue that the serial litigation engaged in by Smith and DSA undercuts Smith's allegations of his intent to return to their hotel.  (Defs.' Mem. in Supp. at 7.)  Some "courts have found that a serial plaintiff's extensive litigation history can undercut a professed intent to return."  *Steelman*, 2012 WL 4026686, at *4 (quotation omitted).   Yet, as one district court judge in the Western District of Missouri has observed:

> [T]he Eighth Circuit and other appellate courts have recognized [that] private litigation serves as an important means to enforce the public policy behind civil rights statutes such as the ADA and serial litigants serve a valuable purpose as private attorneys generals ensuring that the ADA yields its promises of equal access to disabled persons.

*Adams*, 2015 WL 7738374, at *3 (citing cases).  Again, these and other issues can be more fully explored during discovery.[10]  For purposes of this motion, however, the Court concludes that the allegations in the Complaint are enough to state a claim that Smith was injured by architectural barriers in the parking lot when he attempted to patronize Defendants' hotel.

---

[10] Discovery in this case may well shed more light on questions that may be relevant to standing and other issues in this case, such as: Was the lot full?  If not, did Smith try parking next to an empty spot?  Who discussed and was involved in planning the trip?  Who initiated such discussions?  What was the purpose of the trip?  Who paid for the trip?  Was there any reimbursement for the trip costs?  How is DSA funded?  With whom was Smith travelling?  Why this hotel?  Were there other hotels in the vicinity with accommodations where Smith could have stayed and, if so, did he?  Who gave notice of the accessibility issues to Defendants, and when?  Discovery is needed to elucidate these and other issues.

### b. Mootness

Defendants argue that, following the commencement of this suit, they "have remediated any deficiencies in their parking lot" and, accordingly, there is no relief left to give.  (Defs.' Mem. in Supp. at 10.)  "[A] defendant's voluntary removal of alleged [architectural] barriers prior to trial can have the effect of mooting a plaintiff's ADA claim."  *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011).  "A plaintiff must have standing throughout the life of a case, not just at the beginning, in order for it to constitute a justiciable 'case or controversy' under Article III.  Otherwise, the case becomes moot."  *Sawczyn*, 8 F. Supp. 3d at 1113 (citation omitted).  "'It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.  If it did, courts would be compelled to leave the defendant free to return to his old ways.'"  *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000)).  "The defendant carries a 'heavy burden' of demonstrating not only that it has voluntary ceased the offending conduct but also that it is 'absolutely clear' the offending conduct 'could not reasonably be expected to recur.'"  *Id.* (quoting *Friends of the Earth*, 528 U.S. at 189).

Defendants have submitted two affidavits purporting to show that the architectural barriers at issue have since been removed.  (ECF Nos. 23, 36.)  Under Rule 12(c), however, "the court generally must ignore materials outside the pleadings" unless the materials are matters of public record, do not contract the complaint, or are necessarily embraced by the pleadings.  *Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minn., LLC*, No. 09-cv-3037 (SRN/LIB), 871 F. Supp. 2d 843, 851 (D. Minn. 2012); *see*

Fed. R. Civ. P. 12(c) ("If, on a motion under Rule . . . 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). Substantive affidavits and declarations of the parties are not considered. *Great Lakes Gas Transmission Ltd. P'ship*, 871 F. Supp. 2d at 851. The Court has not considered these two affidavits. Whether the alleged architectural barriers have been removed is more appropriately determined once the parties have been able to complete some discovery.[11] *See Wong*, 2015 WL 225231, at *2 n.1 (declining to address factual challenge to plaintiff's standing "at this early juncture[]as no discovery has taken place" and noting defendant "may explore the basis for standing during discovery and mount a factual challenge at a later stage of the proceedings").

Moreover, even if the Court were to accept Defendants' assertions that the architectural barriers have been removed, Defendants bear a heavy burden to persuade the Court that they will remain complaint in the future. Thus, while some steps may have been taken to remove the architectural barriers in question, the Court at this time and for purposes of this motion "cannot conclude as a matter of law that it is 'absolutely clear' another . . . lapse in compliance 'could not reasonably be expected to recur.'" *Sawczyn*, 8 F. Supp. 3d at 1115 (quoting *Friends of the Earth*, 528 U.S. at 189). Consequently, this matter is not moot. Based on the foregoing, the Court finds that Smith has standing.

---

[11] In a similar vein, the Court does not address Plaintiffs' contention that the existence of "undiscovered architectural barriers" at Defendants' hotel is sufficient to confer standing on Smith. (*See* Pls.' Mem. in Opp'n at 17-18.)

### 2.  Associational Standing

Turning now to DSA, DSA

> "has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."

*ILC*, 711 F.3d at 869 (quoting *Friends of the Earth*, 528 U.S. at 181); *accord Red River Freethinkers v. City of Fargo*, 679 F.3d 1015, 1022 (8th Cir. 2012).  DSA "need not establish that all of its members would have standing to sue individually so long as it can show that 'any one of them' would have standing." *ILC*, 711 F.3d at 869 (quoting *Warth v. Seldin*, 422 U.S. 490, 511 (1975)).

As stated above, Smith, as a member of DSA, has standing and, thus, DSA has satisfied the first element.  *See ILC*, 711 F.3d at 869 ("The only remaining element is whether any individual member would have standing to sue in its own right, which requires any [association] member to satisfy the three components that encompass the irreducible constitutional minimum of standing." (quotation omitted)).

With respect to the second element, Defendants themselves recognize that "DSA seems to have the organizational purpose of 'eliminating discrimination on the basis of disability' and improving the lives of those with disabilities—things that would seem to be served by seeking an accommodation."  (Defs.' Mem. in Supp. at 8.)  Indeed, the Complaint states that each member of DSA "is a person with a disability" and "[t]he purpose of [DSA] is to 'eliminate discrimination on the basis of disability' and 'promote

the betterment of the lives of those living with disabilities.'" (Compl. ¶ 8.) Defendants argue, however, that "there is no pleaded fact as to how those organizational purposes are actually served by suing [them] or seeking accommodation at their [h]otel for *this organization* and *its members*." (Defs.' Mem. in Supp. at 8.) Plaintiffs respond that "[t]he purpose of DSA is to eliminate discrimination on the basis of disability," and, "[i]n this action, the DSA seeks to represent the interests of persons with disabilities to reduce discrimination against them, which is clearly germane to its organizational purpose." (Pls.' Mem. in Opp'n at 12.)

Here, the stated purposes of DSA are to remove discrimination on the basis of disability and improve the lives of those living with disabilities. "Title III of the ADA proscribes discrimination in places of public accommodation against persons with disabilities." *Steger*, 228 F.3d at 892. Such discrimination includes "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv); *accord Steger*, 228 F.3d at 892. DSA's claimed purposes of removing discrimination on the basis of disability and improving the lives of those living with disabilities is germane to its members' interest in the removal of architectural barriers whose removal is readily achievable. Accordingly, DSA has satisfied the second element.

As for the third element, Defendants' argue that "DSA's members' disabilities are not pleaded with specificity except as to Smith individually, and therefore no connection has been made as to how DSA as an organization might have organizational standing over and above Smith's individual potential standing based on his physical disability."

23

(Defs.' Mem. in Supp. at 8-9.)  Plaintiffs respond that DSA is seeking "a declaratory judgment and injunctive relief under Title III of the ADA.  Thus, an individual member of the association is not required . . . ." (Pls.' Mem. in Opp'n at 13.)  The primary relief Plaintiffs seek is the removal of the alleged architectural barriers.  (*See* Compl. ¶¶ 1, 5, 14-17, 30, 33-36, 40-44, 49-53, b.)   The primary relief sought—the removal of the alleged architectural barriers—"'does not make the individual participation of each injured party indispensable to proper resolution of the cause.'"  *Red River Freethinkers*, 679 F.3d at 1022 (quoting *Warth*, 422 U.S. at 511) (where primary relief sought was removal of religious monument, participation by individual members of atheistic and agnostic association was not required); *see Warth*, 422 U.S. at 515 ("[W]hether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought.  If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured.").  Therefore, the Court likewise concludes that DSA has satisfied the third element.

In sum, the Court finds that both Smith and DSA have standing and this matter is not moot.  Therefore, the Court recommends that to the extent Defendants seek judgment on the pleadings for lack of standing and mootness, the motion should be denied.

## B.  Statement of a Claim

Defendants also move to dismiss Plaintiffs' claims for failure to state a claim.  To withstand a motion to dismiss for failure to state a claim, "a complaint must contain

sufficient factual allegations to 'state a claim to relief that is plausible on its face.'" *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  "[A]lthough a complaint need not contain 'detailed factual allegations,' it must contain facts with enough specificity 'to raise a right to relief above the speculative level.'"  *United States ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

## 1. ADA/MHRA

"The ADA and MHRA each prohibit discrimination 'on the basis of disability in the full and equal enjoyment of . . . any place of public accommodation.'"  *Wong*, 2015 WL 225231, at *1 (quoting 42 U.S.C. §12182(a)) (citing Minn. Stat. § 363A.11, subd. 1(a)(2)).  For purposes of this motion, the parties agree that Plaintiffs' claims under these two statues are analyzed in the same fashion and do not appear to dispute that Defendants' hotel is a place of public accommodation.  (Defs.' Mem. in Supp. at 14-16; Pls.' Mem. in Opp'n at 19.)  *See* 42 U.S.C. § 12181(7)(A) (inns, hotels, motels, and other places of lodging considered public accomodations); Minn. Stat. § 363A.03, subd. 34

25

("'Place of public accommodation' means a business, accommodation, refreshment, entertainment, recreation, or transportation facility of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages or accommodations are extended, offered, sold, or otherwise made available to the public."); *Wong*, 2015 WL 225231, at *1-4 (analyzing ADA and MHRA claims for discrimination on the basis of disability together).

Defendants repeat that Plaintiffs have not been injured. (Defs.' Mem. in Supp. at 14-15.) The Court has already addressed this argument in Section IV.A.1.a *supra*. Defendants also argue that Plaintiffs have not specifically pleaded how the parking lot violates the ADA Accessibility Guidelines ("ADAAG"), *see* 28 C.F.R. pt. 36, app. A; *see also* https://www.access-board.gov/guidelines-and-standards/buildings-and-sites/about-the-ada-standards/background/adaag, and have not sufficiently alleged that the Defendants' hotel is new construction to which the ADAAG applies. (Defs.' Mem. in Supp. at 14-16.) Plaintiffs respond that the Complaint contains both references to the applicable provisions of the ADAAG and a "plain language description" for the alleged violations and "Defendants are confusing the standard for determining whether an architectural barrier *exists* with the standard for whether an architectural barrier must be *removed*." (Pls.' Mem. in Opp'n at 21-23.)

Defendants' specificity argument is unavailing. As observed by the Ninth Circuit, "[t]he ADAAG's requirements are as precise as they are thorough, and the difference between compliance and noncompliance with the standard of full and equal enjoyment established by the ADA is often a matter of inches." *Chapman v. Pier 1 Imports (U.S.)*

*Inc.*, 631 F.3d 939, 945-46 (9th Cir. 2011).  Here, Plaintiffs have provided both a plain-language description of the alleged violations and cited to the relevant part of the ADAAG describing the requirements for parking spaces.  (*See* Compl. ¶¶ 14, 15, 30(a).)  These allegations include the absence of any accessible spaces, *see* ADAAG § 4.1.2(5) (setting forth minimum number of accessible spaces required based on lot size); the absence of access aisles, *see* ADAAG § 4.6.3 (requiring access aisles); and the absence of signage designating an accessible parking space as reserved, *see* ADAAG § 4.6.4 ("Accessible parking spaces shall be designated as reserved by a sign showing the symbol of accessibility." (citation omitted)).  Plaintiffs have alleged that Defendants' hotel, a place of public accommodation, does not have any accessible parking spaces because the lot contains no spaces designated and reserved as accessible and there are no access aisles.  These allegations are sufficient to state a claim.  *See Wong*, 2015 WL 225231, at *3.

Defendants' remaining argument is essentially that Plaintiffs have not adequately pleaded what must be done with the alleged architectural barriers because this depends on whether their hotel constitutes an existing facility or new construction.  Both parties cite to *Gathright-Dietrich v. Atlanta Landmarks, Inc.*, a case from the Northern District of Georgia, discussing differing treatment of existing facilities and new construction under the ADA:

> Based on the language of the ADA, the purpose of the Standards and the cases which discuss barriers in existing facilities, the Court concludes a "barrier" under the ADA should be determined using the Standards as a guide. However, it is clear the Standards are not intended to prescribe what must be done to address an alleged barrier

in a facility that existed at the time the ADA was passed. They are to be used as a guide, not a requirement. It is well settled that:

> The ADA establishes different standards for existing facilities and new construction. In existing facilities, where retrofitting may be expensive, the requirement to provide access is less stringent than it is in new construction and alterations, where accessibility can be incorporated in the initial stages of design and construction without a significant increase in cost.

435 F. Supp. 2d 1217, 1226 (N.D. Ga. 2005) (quoting ADA Title III Technical Assistance Manual, U.S. Department of Justice (1993) at 31), *aff'd*, 452 F.3d 1269 (11th Cir. 2006)); *see Wong*, 2015 WL 225231, at *3 n.2 (removal of architectural barriers to accessibility that are readily achievable "applies only to places of public accommodation that have not been constructed or modified since January 26, 1993"). As stated above, Plaintiffs have adequately stated an ADA claim based on the presence of architectural barriers. Under Rule 8, Plaintiffs are not required to allege what is to be done with those architectural barriers and whether Defendants have any affirmative defenses available to them. *See* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"); *Wong*, 2015 WL 225231, at *3 (plaintiff not required to allege that removal of alleged architectural barrier was readily achievable).

Based on the foregoing, the Court concludes that Plaintiffs have alleged sufficient facts to state a claim under the ADA (and, as a result, the MHRA), and therefore recommends that Defendants' motion to dismiss these claims be denied.

### 2.  Bias Offense

Defendants also contend that Plaintiffs have failed to state a claim for civil damages under Minn. Stat. § 611A.79 because there are no allegations of discriminatory animus.  (Defs.' Mem. in Supp. at 16-17.)  Plaintiffs respond that Minn. Stat. § 611A.79 covers both intentional and unintentional discrimination.  (Pls.' Mem. in Opp'n at 24-26.)

Under Minnesota law, "[a] person who is damaged by a bias offense has a civil cause of action against the person who committed the offense."  Minn. Stat. § 611A.79, subd. 2.  A "'bias offense' means conduct that would constitute a crime and was committed *because of* the victim's or another's actual or perceived race, color, religion, sex, sexual orientation, disability as defined in section 363A.03, age, or national origin." *Id.*, subd. 1 (emphasis added).   Setting aside the paragraphs of the Complaint incorporating and realleging the prior paragraphs and making statements of law, only a single allegation remains with respect to this count: "Defendants committed a bias offense against Plaintiffs by violating the MHRA's public accommodation provisions and by discriminating against Plaintiffs on the basis of their respective disabilities."  (Compl. ¶ 58.)  Plaintiffs have "simply recite[d] the elements of a cause of action under Minn. Stat. § 611A.79."  *Lacross v. City of Duluth*, No. 10-cv-3922 (JNE/LIB), 2011 WL 12896026 at *3 (D. Minn. July 18, 2011).  This is not sufficient.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555; *Lacross*, 2011 WL 12896026 at *3.  The Court does not, and need not, reach the question of whether Minn. Stat. § 611A.79 requires intentional

discrimination.[12]   Further, Plaintiffs have cited to no direct authority to support their contention that "[i]f [they] prove their MHRA claim they, as a matter of law, also prove their Section 611A.79 claim."  (Pls.' Mem. in Opp'n at 26 (footnote omitted).)

Because the Court concludes that Plaintiffs have not provided anything more than a "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, the Court recommends that Plaintiff's claim for civil damages under Minn. Stat. § 611A.79 be dismissed for failure to state a claim.

### C.  Name Amendment

Defendants request that the Court "correct" the case caption with respect to Defendant "Rasheshri" Bhakta, stating that Plaintiffs have "refused to agree to a stipulation" to correct the misspelling of her name.  (Defs.' Mem. in Supp. at 2 n.1.) Defendants state that the correct spelling of Ms. Bhakta's first name is "Rajeshri." (Answer ¶ 9; Defs.' Mem. in Supp. at 2 n.1.)  Plaintiffs oppose this request, pointing out that the most recent property tax statement for the hotel in question lists Ms. Bhakta as "Rasheshri."  (Pls.' Mem. in Opp'n at 3.)   Plaintiffs have filed a copy of the tax statement, which is addressed to "MINESH R & RASHESHRI BHAKTA."  (Ex. A to Decl. of Paul Hansmeier, ECF No. 33-1.)  The Court agrees with Plaintiffs that this request should be denied without prejudice.  In recommending that Defendants' request be denied at this time, the Court intends no offense to Ms. Bhakta.  The discrepancy

---

[12] The Court notes that case law suggests there must be an inference of discriminatory animus under Minn. Stat. § 611A.79.  *See Lacross*, 2011 WL 12896026, at *4 ("While a defendant's motivation can be inferred from circumstantial evidence, . . . the Court finds nothing in the police report or the Complaint which would allow even a plausible inference that the Tasering was motivated by age bias on the part of Officer Marc."); *Sievers v. City of Minneapolis*, No. 09-cv-816 (DSD/SER), 2011 WL 284486, at *5 (D. Minn. Jan. 25, 2011) ("The court has already determined that no evidence supports an inference that the officers acted out of racial animus, and there is no evidence to show that the officers acted 'because of' Seivers's race.").

between the public record and Defendants' asserted spelling of Ms. Bhakta's first name, however, is a matter best addressed during discovery.   Accordingly, to the extent Defendants request that the case caption be amended to correct the spelling of Ms. Bhakta's first name, the Court recommends that such request be denied without prejudice.

### D. Fees

Defendants request that they be awarded fees and costs associated with this litigation pursuant to the ADA and MHRA as well as sanctions under 28 U.S.C. § 1927 should it be determined that Plaintiffs have failed to state a claim for which relief can be granted.  A prevailing party may seek a discretionary award of attorney fees "in an action brought pursuant to the ADA and MHRA." *Quasis v. Schwan Food Co.*, No. 08-cv-575 (JNE/JJG), 2010 WL 3218591, at *1 (D. Minn. Aug. 13, 2010) (citing 42 U.S.C. §12205; Minn. Stat. § 363A.33, subd. 7).  "A prevailing defendant in an ADA case is entitled to attorney fees 'only in very narrow circumstances.'" *Id.* (quoting *Marquart v. Lodge 837, Int'l Ass'n of Machinists & Aerospace Workers*, 26 F.3d 842, 848 (8th Cir. 1994) (internal quotation marks omitted)).  "Sanctions are proper under § 1927 when the attorney's conduct, viewed objectively, manifests either intentional or reckless disregard of [his or] her duties to the Court." *Id.* at *2.

Defendants argue that

> [t]he pattern of serial litigation, and vexatious use of the anti-SLAPP statute as an intimidation tool, including the request for $100,000 in punitive damages, should be evaluated by the court in this analysis.  In looking at this case on the whole, the court should rightly question why Plaintiffs brought this case

in the first place, and even if that was appropriate, why they persisted in the case after receiving proof that the parking lot had brand new signs and paint which fully complied with ADAAG.  The court can be left with a single conclusion— that the Plaintiffs filed this action not seeking an accommodation, but to extract a financial reward from the Defendants.  That is an action in bad faith and certainly demonstrates that Plaintiffs are vexatious in their assault to attain that financial goal.

(Defs.' Mem. in Supp. at 20.)  Plaintiffs oppose any award of fees and costs.

Defendants' arguments in support of fees and costs largely mirror the serial-litigation arguments previously raised.  As stated above, whether Plaintiffs actually intended to patronize Defendants' hotel and intend to return are topics more appropriately flushed out in discovery.  The Court has determined that Plaintiffs have stated claims for violations of the ADA and MHRA.  Given that these claims remain, the determination of whether fees and costs are available is premature.  The most apposite authority addressing the (non)applicability of Minnesota's anti-SLAPP statutes in federal court was issued after briefing in this matter was largely complete and approximately one month before the hearing.  *See generally Unity Healthcare*, 308 F.R.D. 537.  At the hearing, Plaintiffs' counsel immediately acknowledged the *Unity Healthcare* decision and stated that he had nothing further to add.  While the Court has recommended that Plaintiffs' claim for civil damages under Minn. Stat. § 611A.79 be dismissed, the inferences of bad faith Defendants ask the Court to draw are actually rooted in Plaintiffs' continued litigation of their ADA and MHRA claims.  Discovery may prove Defendants' suspicions to be correct.  But, at the present time, Defendants' request is premature.  Therefore, the

Court recommends that Defendants' request for fees and costs be denied without prejudice.

## V. RECOMMENDATION

Based on the files, proceedings, and records herein, and for the reasons stated above, **IT IS HERBY RECOMMENDED** that:

1. Plaintiffs' Motion to Dismiss (ECF No. 12) **BE DENIED**.

2. Defendants' Motion for Judgment on the Pleadings and Alternative Relief (ECF No. 25) **BE GRANTED IN PART** and **DENIED IN PART** as set forth herein.

Date: February _____12_____, 2016

_____s/ Tony N. Leung_____
Tony N. Leung
United States Magistrate Judge
for the District of Minnesota

*Disability Support Alliance v. Monali, Inc. et al.*
Case No. 15-cv-1522 (MJD/TNL)

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:**  This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.